IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN MICHAEL FAIRCHILD, <br><br> Petitioner, <br><br> v. <br><br> SHANE NELSON, <br><br> Respondent. | **MEMORANDUM DECISION & ORDER GRANTING MOTION TO DISMISS HABEAS-CORPUS PETITION** <br><br> Case No. 2:17-CV-1317-DN <br><br> District Judge David Nuffer |

Petitioner, Steven Michael Fairchild, requests habeas-corpus relief from his Utah state convictions. *See* 28 U.S.C.S. § 2254 (2019). His convictions were affirmed by the Utah Court of Appeals. *State v. Fairchild*, 2016 UT App 205, ¶ 1, *cert. denied*, 390 P.3d 724 (Utah 2017). Respondent moves for dismissal. (Doc. No. 17.)

## I. BACKGROUND

The facts are drawn from the Utah Court of Appeals's opinion:

> The State charged Defendant with one count of aggravated robbery, a first degree felony; four counts of possession of a firearm by a restricted person, a second degree felony; one count of possession of a controlled substance with intent to distribute, a second degree felony; and four counts of receiving stolen property, a second degree felony. The State also sought to enhance Defendant's sentence by having him designated as a habitual violent offender. The parties agreed that the judge would determine whether Defendant was a habitual violent offender and that the remaining issues would be tried to a jury.
> Before trial, the State moved to admit evidence, under rule 404(b) of the Utah Rules of Evidence, that Defendant was convicted of robbing two Logan banks in December 1998 and January 1999. The State argued that this evidence would show motive, plan, intent, and identity and that it was not attempting to impugn Defendant's character or establish his criminal propensity.

The court denied the State's motion and ordered that it not put on evidence of Defendant's prior crimes at trial. One day before trial, Defendant moved to sever the "restricted person" requirement from the rest of the restricted-person-in-possession-of-a-firearm charge. Instead, the parties stipulated that the "restricted person" requirement was satisfied. The court agreed, ordering that it would instruct the jury as to Defendant's restricted status but "would not allow any evidence regarding [Defendant's] previous convictions or the reasons why he is a restricted person."

 Despite the 404(b) pretrial order and the stipulation, there were multiple references to Defendant's status as a parolee during trial. First, during the State's opening statement, the prosecutor told the jury that Parole Officer "was a supervisor over [Defendant's parole]," and Defendant's trial counsel did not object. Indeed, trial counsel characterized Parole Officer in much the same way during his own opening statement. Later, Parole Officer testified that he knew Defendant in his capacity as a parole officer, stating that "in June of 2011, [Defendant] paroled from prison to my caseload." But he did not say why Defendant previously had been imprisoned, and the prosecutor asked no follow-up questions. Defendant objected and moved for a mistrial. The trial court denied the mistrial motion.

 During closing arguments, Defendant's trial counsel and the prosecutor each referred to Defendant's status as a parolee. First, trial counsel said, "in the late fall of 2011, [Defendant] and [Girlfriend] went to the office of [Parole Officer]. They asked . . . permission to live together, to further their relationship. [He] granted their request." And the prosecutor repeated Parole Officer's name and title before stating, "He supervised the defendant."

 When the court was preparing to instruct the jury that Defendant was a restricted person, the prosecutor suggested that the instruction include that Defendant was on parole at the time of the gas station robbery. The court refused, stating, "Well, I don't want to bring any more attention to that fact, frankly. I shouldn't have--well, parole, we're okay with that." The court ultimately issued a limiting instruction, informing the jury that Parole Officer only mentioned Defendant's parole to show that he

> knows the defendant and is familiar with him. Do not use it for any other purpose. It is not evidence that the defendant is guilty of the crimes for which he is now on trial. . . . You may not convict a person simply because you believe he may have

committed some other acts at another time.

The jury also heard testimony from Girlfriend, the two employees who were at the gas station during the robbery, and Employee. One of the employees testified that the robber had blue eyes, but Defendant has brown eyes. The State also presented the gas station's surveillance video, which showed the male suspect wore a dark hooded jacket, jeans, and white shoes. And it presented evidence of the items police found in Defendant's truck-- the bandana, wallet, Camel cigarettes, psychedelic mushrooms, and guns.

The jury returned a guilty verdict on each of the ten counts against Defendant. The court then initiated a bench trial on the issue of whether Defendant was a habitual violent offender. It determined that he was. At sentencing, the trial court imposed indeterminate sentences of five years to life for aggravated robbery and each of the four weapons possession charges, one to fifteen years for the drug possession charge, and one to fifteen years for each theft by receiving stolen property charge. The court ordered that these sentences run consecutively to each other and to the sentence Defendant was already serving.

Defendant then filed a motion for new trial, arguing that the statements during trial that he was on parole violated the pretrial order and unfairly prejudiced him. The court denied Defendant's motion, ruling that Parole Officer's testimony did not violate the pretrial order and that, even if it did, the error was harmless both because the totality of the evidence supported conviction and because the curative instruction ameliorated any potential harm.

Finally, Defendant filed a motion challenging the legality of his sentence. Citing Utah Code section 76-3-401, he asserted that consecutive sentences can never exceed thirty years. The trial court denied the motion on the ground that Defendant received five sentences with a maximum sentence of life imprisonment and the thirty-year limitation does not apply to offenses with the possible maximum sentence of life imprisonment. *See* Utah Code Ann. § 76-3-401(1)(6)(b) (2012). Defendant appeals the trial court's denial of his motion for a new trial and his sentence.

*Fairchild*, 2016 UT App 205, ¶¶ 6-14.

The Utah Court of Appeals affirmed Petitioner's conviction, after rejecting Petitioner's assertions that (a) he should have been granted "a new trial because Parole Officer's testimony

and the other references to his status as a parolee violated the trial court's pretrial order and denied him his rights to due process, the presumption of innocence, and a fair trial," *id*. ¶ 17; and, (b) his sentence violated state statute and the Utah Constitutional grant of authority to the Utah Board of Pardons and Parole, *id*. ¶ 26.

Petitioner then brought an unsuccessful petition for certiorari review before the Utah Supreme Court. (*Doc. No*. 17-9.) These are his "Questions Presented for Review" there: (1) Did the Utah Court of Appeals err in not imposing "a heightened harmless error burden where the statements and evidence submitted to the jury violated [Petitioner's] constitutional right to a fair trial?" (*Id*.) And, (2) "under the correct burden, can it be said beyond a reasonable doubt that the repeated references to [Petitioner being a restricted person and recent parolee were] all harmless?" (*Id*.)

## II. ASSERTED GROUNDS FOR FEDERAL HABEAS RELIEF

Here, Petitioner raises the following issues: (1) "Constitutional violation(s) Article one Section 7 Due Process of Law, Utah Constitution," specifying that the Utah Court of Appeals did not properly address "the *Chapman* standard," *Chapman v. California*, 386 U.S. 18, 25-26 (1967) ("In evaluating whether an evidentiary error was harmless beyond a reasonable doubt, the State bears the burden of demonstrating that the improperly elicited testimony was harmless beyond a reasonable doubt."), and that the trial court and defense counsel violated Petitioner's presumption of innocence; (2) trial court's plain error in allowing prosecution to repeatedly introduce suppressed evidence; (3) ineffective assistance of counsel regarding counsel's failure to object to introduction of suppressed evidence; and (4) "Constitutional violation(s) & under Utah Code Section 76-3-401, the Eight Amendment to the U.S. Constitution and Article one

4

Section 9 of the Utah Constitution, " specifying "[t]he trial court failed to consider the proper factors and its harsh sentence is not justified." (Doc. No. 1.)

## III. CHALLENGES BASED ON STATE LAW

Petitioner alleges violations of the Utah Constitution's Due Process Clause and prohibition on cruel and unusual punishment, the state trial court's ruling requiring suppression of evidence based on the Utah Rules of Evidence, and state sentencing law.

These alleged violations are based on state law and, therefore, fail to raise a federal issue, as required. The United States Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").

The Supreme Court has repeatedly emphasized "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 67-68 (citing 28 U.S.C.S § 2241 (2019)). Thus, Petitioner's claims--based on alleged violations of the state constitution and statute--do not raise federal challenges; further federal habeas review of state-law-based claims is unwarranted. *See Larson v. Patterson,* 2:09-CV-989-PMW, 2011 U.S. Dist. LEXIS 3831 (D. Utah Jan. 14, 2011) (unpublished) ("Petitioner's first argument that the trial court should have . . . dismissed the charges against him is based entirely on state law. . . . Therefore, this Court will not further consider this state-law-based argument."); *see also Scott v. Murphy*, 343 F. App'x 338, 340 (10th Cir. 2009) (rejecting petitioner's . . . claim that "involve[d] purely matters of state law.").

Thus, these issues--based on state law--will not be treated further: due process and cruel-and-unusual punishment arguments based on the Utah Constitution; assertions of evidentiary errors by trial court in allowing suppressed evidence at trial; and allegedly improper sentencing based on Utah statute.

## IV. PROCEDURAL DEFAULT

In addition, every asserted ground for relief here is procedurally defaulted on federal habeas review. This is because the only issue Petitioner raised to the Utah Supreme Court was first raised in his reply brief on appeal to the Utah Court of Appeals. (Doc. Nos. 17-7 & 17-9.) The issues raised to the supreme court regarded only what standard the court of appeals should have used in evaluating any possible prejudice to Petitioner caused by the trial court's error in violating its own evidentiary ruling. (Doc. No. 17-9.)

The court of appeals noted,

> [H]aving ruled in its pretrial order that "evidence pertaining to the prior robberies" could not be admitted at trial, it is perplexing that the trial court permitted the jury to hear references to Defendant's status as a recently released parolee in opening and closing argument and during Parole Officer's testimony. Because the trial court had already determined in its pretrial order that the evidence violated Rule 404, the evidence should not have been admitted and failure to exclude it was erroneous.
> Nevertheless, we cannot conclude that Defendant was prejudiced by these statements. In denying Defendant's motion for new trial, the trial court correctly concluded that any violation of its pretrial order was harmless. Errors are harmless when "there is no reasonable likelihood that the error affected the outcome of the proceedings." *State v. Verde*, 770 P.2d 1116, 120 (Utah 1989). And we require that the error be substantial enough that "the likelihood of a different outcome [is] sufficiently high to undermine confidence in the verdict." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987); *cf. State v. Housekeeper*, 2002 UT 118, ¶ 26, 62 P.3d 444 ("[E]ven if we assume that the evidence was improper, an appellate court will not overturn a jury verdict for the admission of

> improper evidence if the admission of the evidence did not
> reasonably [a]ffect the likelihood of a different verdict.").

*Fairchild*, 2016 UT App 205, ¶¶ 18-19 (citation & footnote omitted).

So, the harmless-error issue was before the trial court, yet Petitioner did not argue for use of the *Chapman* standard of review until his reply brief in the Utah Court of Appeals:

> While Utah Courts will not reverse a harmless constitutional violation, *see Harmon*, 956 P.2d at 268, they require a new trial if "there is a reasonable probability that it affected the reliability of the trial outcome." *Id*. Furthermore, **"the State bears the burden of demonstrating that the improperly elicited testimony was harmless beyond a reasonable doubt**." *State v. Morrison*, 937 P.2d 1293, 1296 (Utah Ct. App. 1997) (emphasis added)."

(Doc. No. 17-7.) It is really this last sentence that is the crux of Petitioner's failure to exhaust. His whole argument to the Utah Supreme Court is that the Utah Court of Appeals did not use that--bolded--standard when evaluating the prejudice to Petitioner of the erroneously allowed evidence of Petitioner's parolee status.

But, Utah state law holds that "[i]ssues not raised in an opening brief are waived." *Rodriguez v. Kroger Co.*, 2018 UT 25, ¶ 31, n.8. The Utah Supreme Court explained,

> This requirement is rooted in considerations of fairness. If new issues could be raised in a reply brief, the appellee would have no opportunity to respond to those arguments. It is well settled that "issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court."

*Allen v. Friel*, 2008 UT 56, ¶ 8.

This Court may not consider issues "defaulted in state court on independent and adequate state procedural grounds 'unless [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

7

consider the claims will result in a fundamental miscarriage of justice.'" *Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Utah's appellate rules state that "issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." *Brown v. Glover*, 2000 UT 89, ¶ 23. Petitioner did not raise the *Chapman* standard until his reply brief before the Utah Court of Appeals; thus, he waived that issue and it was not considered in the court of appeals's opinion. *Fairchild*, 2016 UT App 205.

Based on the Court's review of Utah cases, these rules are "independent and adequate state procedural ground[s]" for dismissal of Petitioner's case in that they are "'strictly or regularly followed' and employed 'evenhandedly to all similar claims.'" *See Hamm*, 300 F.3d at 1216 (quoting *Hickman v. Sears*, 160 F.3d 1269, 1271 (10th Cir. 1998)) (quotation omitted in original); *see, e.g., Rodriguez*, 2018 UT 25, ¶ 31, n.8; *Allen*, 2008 UT 56, ¶ 8; *Brown*, 2000 UT 89, ¶ 23.

Under the federal law outlined earlier, this Court must therefore dismiss Petitioner's defaulted issues unless cause and prejudice or a fundamental miscarriage of justice redeems their default. *See Gonzales v. Jordan*, 37 F. App'x 432, 436 (10th Cir. 2002) (unpublished).

Petitioner possibly argues cause and prejudice are at play here. Specifically, Petitioner may assert cause and prejudice stem from his lack of legal resources and experience.

"[T]o satisfy the 'cause' standard, Petitioner must show that 'some objective factor external to the defense' impeded his compliance with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (citations omitted). Meanwhile, to demonstrate prejudice, "'[t]he habeas petitioner must show not merely that . . . errors . . . created a possibility of

prejudice, but that they worked to his *actual* and substantial disadvantage.'" *Butler v. Kansas*, No. 02-3211, 2002 WL 31888316, at *3 (10th Cir. Dec. 30, 2002) (unpublished) (alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original)).

Petitioner has not met his burden of showing that objective factors external to the defense hindered him in meeting state procedural demands. Under Tenth Circuit case law, lack of legal resources and knowledge (including Petitioner's own misunderstanding) are circumstances that do not carry Petitioner's burden to show cause. *Gilkey v. Kansas*, No. 02-3227, 2003 U.S. App. LEXIS, at *6 (10th Cir. Feb. 4, 2003) (unpublished) (holding limited knowledge of the law is insufficient to show cause for procedural default); *Rodriguez v. Maynard*, 948 F.2d 684, 688 (10th Cir. 1991) (concluding petitioner's pro se status and his corresponding lack of awareness and training on legal issues do not constitute adequate cause for his failure to previously raise claims). Indeed, these are factors that are *internal* to Petitioner's "defense."

In sum, the Court concludes that Petitioner's issues are procedurally defaulted. And, these issues do not qualify for consideration under the cause-and-prejudice exception to the procedural bar. The Court thus denies Petitioner federal habeas relief.[1]

---

[1] Petitioner's Motion for Additional Pages (for Amended Information in Support of Writ for Habeas Corpus) contains an incoherent argument regarding *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which is apparently raised for the first time in that responsive-type pleading; the Court will not address it further. (Doc. No. 20.) The Motion appears to be more properly construed as a response to Respondent's Motion to Dismiss, (Doc. No. 17).

## V. CONCLUSION

Petitioner's habeas challenges are procedurally barred and do not qualify for exceptional treatment. **IT IS THEREFORE ORDERED** that the Motion to Dismiss is **GRANTED**. (Doc. No. 17.)

DATED this 3rd day of September, 2019.

BY THE COURT:

_____
DAVID NUFFER
United States District Judge